UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| FEMI E. ISIJOLA, <br>     Plaintiff, <br><br> v. <br><br> RHODE ISLAND DEPARTMENT OF REVENUE, et al., <br>     Defendants. | C.A. No. 23-cv-60-MRD-PAS |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is the State Defendants'[1] Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 14. The Court has reviewed Mr. Isijola's *pro se* Complaint and accompanying exhibits along with Mr. Isijola's Objection to the Motion to Dismiss. ECF Nos. 1, 19.

This case centers on Mr. Isijola's contention that the State Defendants violated his constitutional rights under the Fifth[2] and Fourteenth Amendments to the United States Constitution when they cancelled his Rhode Island REAL ID driver's license.

---

[1] The State Defendants are comprised of the Rhode Island Department of Revenue, Division of Motor Vehicles (the "Rhode Island DMV"), Walter Craddock in his Official Capacity as the Administrator of the Rhode Island DMV, Matthew Halstead in his Individual Capacity as Investigator at the Rhode Island DMV, and Bill Madonna in his Individual Capacity as Database Management Systems Specialist at the Rhode Island DMV.

[2] The Fifth Amendment is applicable to federal actors, and Mr. Isijola has not alleged that any of the defendants are federal actors. Accordingly, his claims under the Fifth Amendment fail. *See Neufville v. Coyne-Fague*, C.A. No. 20-005-WES, 2021 WL 322686, at * 3 (D.R.I. Feb. 1, 2021).

ECF No. 1 at 2. This Court must now decide if Mr. Isijola's claims against the State Defendants survive, or if they fail to state a claim for which he can be granted relief. For the reasons explained below, this Court GRANTS the State Defendants' Motion to Dismiss and DISMISSES Mr. Isijola's Complaint.[3]

## I. BACKGROUND

The following facts are alleged in Mr. Isijola's Complaint. Mr. Isijola is an African American male and a resident of Woonsocket, Rhode Island. ECF No. 1 ¶ 4. In describing the administrative travel that he followed in obtaining his Rhode Island driving credentials,[4] he recounts that he received the following: his learner's permit on November 15, 2016, his driver's license on June 2, 2017, and finally, his REAL ID driver's license on February 21, 2019. *Id.* ¶¶ 11, 13, 16. Mr. Isijola also notes that he registered his vehicle in Rhode Island. *Id.* ¶ 17.

At some point in early 2020, Mr. Isijola received a "Notice of Cancellation of License or ID" by mail that stated that his Rhode Island license would be cancelled thirty days from January 6, 2020, because he was issued a credential in

---

[3] Mr. Isijola's Objection to the Motion to Dismiss (ECF No. 19) also includes a "Request for Three-Judge District Court Pursuant to 28 U.S. Code § 455(a)(b)(1)" (*id.* at 4) and a request that District Judge Smith recuse under 28 U.S.C. § 455(b)(1) because Judge Smith "excluded every beneficial evidence in the Plaintiff's favor and denied that Preliminary Injunction." *Id.* The Court DENIES Mr. Isijola's request for a three-judge panel as unsupported and notes that his request for recusal is both legally and factually unsupported and mooted by the retirement of District Judge Smith.

[4] The term "credential" includes both REAL ID and Non-REAL ID licenses, identification cards and permits.

Massachusetts. *Id.* ¶ 18; ECF No. 1-2 at 14.[5]  The Notice states that pursuant to 6 C.F.R. § 37.29[6] and Rhode Island law, Mr. Isijola is "no longer entitled to a Rhode Island driver license, learner permit or state identification card." *Id.*  The Notice provides an email address to contact the DMV (DMV.RIHelpdesk@dmv.ri.gov). *Id.* Mr. Isijola emailed the Rhode Island DMV on January 31, 2020, at the email address provided, and stated that "he is a Rhode Island resident…and does not have any Real ID with any jurisdiction…" ECF No. 1 ¶ 21, ECF No. 1-2 at 7.  On February 3, 2020, Mr. Isijola received a response to his email from Defendant Bill Madonna.  ECF No. 1 ¶ 20.  Mr. Madonna's email informed Mr. Isijola that his Rhode Island REAL ID was subject to cancellation because he "established residency in Massachusetts and was issued a Massachusetts Driver's License." ECF No. 1-1 ¶ 15.  Mr. Isijola "pleaded that his issued State of Rhode Island REAL ID Driver's License should not be cancelled as he has only one REAL ID Driver's License in Rhode Island and not in any other jurisdictions." ECF No. 1 ¶ 23; ECF No. 1-1 ¶ 16.  Mr. Madonna responded the same day and advised Mr. Isijola that he would need to surrender his Massachusetts license in order to maintain a valid Rhode Island credential.  ECF No. 1-1 at ¶ 17.  Mr. Isijola then went to the Rhode Island DMV on February 5, 2020, to

---

[5] The Notice is an attachment to the Complaint and is quoted throughout the Complaint.  On a motion to dismiss under Rule 12(b)(6), "when the factual allegations of a complaint are intertwined with and depend on a document of undisputed authenticity, the document 'merges into the pleadings.'" *Half Moon Ventures, LLC v. Energy Dev. Partners, LLC*, No. CV 18-685-JJM-PAS, 2019 WL 2176308, at *3 (D.R.I. May 20, 2019) (quoting *Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 526 F. Supp. 2d 260, 268 (D.R.I. 2007)).

[6] 6 C.F.R. § 37.29 prohibits an individual from holding more than one REAL ID card or more than one driver's license.

seek assistance. ECF No. 1 ¶ 24. Mr. Isijola did not indicate the result of his February 5, 2020 visit to the Rhode Island DMV, but he states that he discovered on February 14, 2020 that his REAL ID Driver's license had been placed in inactive status. *Id.* ¶ 25; ECF No. 1-1 ¶ 20.

On February 28, 2020 Mr. Isijola returned to the DMV to inquire about the status of his license and was advised that he needed to obtain a driving record from the Registry of Motor Vehicles in Massachusetts. ECF No. 1 ¶ 26; ECF No. 1-1 ¶ 21. He emailed Mr. Madonna again on March 2, 2020, reiterating that "he does not live anywhere except in Rhode Island" and that he has "not physically been" in Massachusetts for two years. ECF No. 1 ¶ 28. He returned to the DMV on March 12, 2020, and met with Defendant Matthew Halstead. Mr. Isijola told Mr. Halstead that he had been a Rhode Island resident for the "entire duration of time" between June 2, 2017, and March 2020. *Id.* ¶¶ 30, 31. He alleges he was promised a response from Mr. Halstead but he did not receive one. *Id.* ¶ 32.[7]

---

[7] In 2023, Mr. Isijola also filed two lawsuits in the District of Massachusetts (*Isijola v. US Telecommunications, Inc et al.*, 4:23-cv-40080-MRG, and *Isijola v. Grasso et. al.*, 4:23-cv-40156-MRG) and one lawsuit in the District of New Hampshire (*Isijola v. NH Department of Safety, et al.*, 1:23-cv-00385-SM-TSM). Although the claims asserted in these cases are distinct from the claims asserted here, the cases are significant in that each contains factual allegations concerning Mr. Isijola's loss of his driver's licenses in Rhode Island, as well as his loss of driver's licenses in Massachusetts and New Hampshire during this same relevant period of time. Additionally, Mr. Isijola filed state court actions in Massachusetts and New Hampshire concerning the same events.

These federal and state court cases are relevant because Mr. Isijola's sworn statements in the present case contradict his sworn statements in those cases. The District Court in Massachusetts noted that the Plaintiff's "recounting of the events is controverted by facts in state legal proceedings brought by Isijola himself to challenge his license revocation that is the starting point of this action." *See* D. Mass Docket

Count I of Mr. Isijola's Complaint asserts that his constitutional right to due process was violated because he was not afforded a hearing in connection with the cancellation of his Rhode Island REAL ID Driver's License. *Id.* ¶¶ 35, 46-62. Count II of his Complaint alleges that as a member of a protected class, his right to equal protection was violated in connection with the cancellation of his Rhode Island REAL ID Driver's License. *Id.* ¶¶ 63-76. Mr. Isijola sought injunctive relief including that Mr. Craddock "reinstate and make active" his driver's license, and he sought to recover monetary damages. ECF No. 1 at 19. District Judge Smith held a chambers conference on February 16, 2023. Following the conference, the Court denied the Plaintiff's Motion for Preliminary Injunction, finding that Mr. Isijola did not demonstrate a likelihood of success on the merits of either of his claims. *See* Text Order dated 2/28/2023.

---

4:23-cv-40156-MRG ECF No. 114. The Court elaborated that "statements in his Amended Complaint in this case regarding his license revocation are patently false…." *Id.* at 6. The Court also stated that Mr. Isijola's "lack of candidness before the Court is only the latest instance of a pattern of contumacious conduct previously highlighted… ." *Id.*

This Court takes judicial notice of the proceedings in these other courts because they "have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). While the Court opts not to parse Mr. Isijola's other factual assertions, there are inconsistencies between his allegations here and those in the other cases. The Plaintiff is reminded that his filings in this Court are subject to Fed. R. Civ. P 11(b), which requires that a *pro se* party certify that to the best of his "knowledge, information and belief, formed after an inquiry reasonable under the circumstances: the factual contentions have evidentiary support…" While a less stringent standard is applied to *pro se* pleadings, "a court may consider the wrongdoer's history." *Obert v. Republic W. Ins. Co.*, 264 F. Supp. 2d 106, 123 (D.R.I. 2003).

The State Defendants filed the present Motion to Dismiss on March 7, 2023, and Mr. Isijola filed his Objection to that Motion on March 20, 2023. The Motion to Dismiss, however, was stayed while Mr. Isijola sought relief before the First Circuit Court of Appeals regarding his Motion for Preliminary Injunction. ECF No. 23. On August 12, 2025, the Court of Appeals affirmed this Court's denials of Mr. Isijola's requests for preliminary injunctive relief and reconsideration, and the Mandate was issued on February 2, 2026. ECF No. 35. The Motion to Dismiss is now ripe.

## II. STANDARD OF REVIEW

Rule 12(b)(6) requires that a plaintiff plead a claim "with enough factual detail to make the asserted claim plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim meets this standard when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The federal pleading standard thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar. Found.*, 993 F.2d 962, 971 (1st Cir. 1993).

The plaintiff is *pro se* and his Complaint is therefore measured against a more lenient standard of pleading. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (*per curiam*). *See also Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) ("courts hold pro se pleadings to less demanding standards than those drafted by lawyers"). Nevertheless, a *pro se*

6

complainant must still allege facts to support a plausible claim. *Sanchez v. Brown Univ.*, No. 1:23-cv-343-JJM-PAS, 2023 WL 6460146, at *1 (D.R.I. Oct. 4, 2023).

### III. DISCUSSION

The State Defendants' Motion to Dismiss (ECF No. 14) sets forth several grounds for dismissal including that the Defendants named in their official capacities are not subject to liability under 42 U.S.C. § 1983, that the Defendants named in their individual capacities are entitled to qualified immunity, and that the Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In Mr. Isijola's Objection to the Motion to Dismiss (ECF No. 19) he repeats many of the arguments made in support of his Motion for a Preliminary Injunction and asserts that the State Defendants "never provided a procedure for requesting a hearing." ECF No. 19-1 at 23. For the reasons explained below, the facts and claims set forth in Mr. Isijola's Complaint clearly fail to state a claim on which relief can be granted, and dismissal of this case is required under Fed. R. Civ. P. 12(b)(6).

#### A. The Due Process Claim

The Fourteenth Amendment to the United States Constitution declares that no state may deprive a person of life, liberty or property without due process of law. It is well-established that a licensee is entitled to procedural due process in connection with the loss of a driver's license. *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Dixon v. Love*, 431 U.S. 105, 112 (1977).

Even when due process is required, however, the Court is mindful that due process is a flexible concept, and that the process that is required to satisfy the Due

Process Clause varies from case to case. *Aurelio v. Rhode Island Dep't of Admin., Div. of Motor Vehicles,* 985 F. Supp. 48, 57 (D.R.I. 1997). In determining what process is due, "courts weigh 'three distinct factors': (1) 'the private interest' 'that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) the government's interest, including 'the fiscal and administrative burdens' posed by alternative procedural requirements.'" *Penobscot Air Servs., Ltd. v. F.A.A.,* 164 F.3d 713, 723 (1st Cir. 1999) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As to the first factor of this test, this Court has recognized that "[a] driver's license is a significant and considerable private interest, impacting one's ability to earn a living and enjoy the liberty of travel, among other things." *Aurelio*, 985 F. Supp. at 57. Nevertheless, Courts have also cautioned that the revocation of a driver's license is "not so critical" that a state is "obligated to replicate a judicial model for resolving its revocation." *Packard v. Hinden*, No. CIV A 05-11906-DPW, 2007 WL 2746799, at *5 (D. Mass. Sept. 7, 2007).

The second factor requires the Court to consider the risk of erroneous deprivation of the right. Rhode Island law authorizes the Governor to enter into reciprocal agreements with other states in "order to improve standardization and compatibility" in driver's license operations in the United States. R.I. Gen. Laws § 31-29-6. In the present case, the Rhode Island DMV received information from the Massachusetts Registry of Motor Vehicles that indicated Mr. Isijola had obtained a

license in Massachusetts. Following the receipt of this information, the State Defendants provided notice of the potential cancellation of Mr. Isijola's license, and the opportunity to contest the Rhode Island DMV's determination by emailing the help desk. Mr. Isijola availed himself of that opportunity. Based on these allegations in the Complaint, the risk of an erroneous deprivation does not weigh in the Plaintiff's favor.

The final factor that the Court must consider is the Government's interest. Here there are at least two important interests held by the State of Rhode Island. The first is "the substantial public interest in administrative efficiency [that] would be impeded by the availability of a pretermination hearing in every case." *Dixon*, 431 U.S. at 114 (citing *Mathews*, 424 U.S. at 347). The Supreme Court elaborated that if a state were required to provide a hearing to each licensee prior to terminating their license, it "would encourage drivers routinely to request full administrative hearings." *Id.* (citing *Mathews*, 424 U.S. at 347). This would cause a substantial drain on administrative efficiency. Yet, the Court also recognized that the administrative burden was less concerning than "the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard." *Id.* Given these important interests, this factor weighs in the State's favor.

The Court has determined that although Mr. Isijola holds a private interest in his Rhode Island REAL ID driver's license, the risk of erroneous deprivation was low given the State Defendants' written notice to Mr. Isijola and the thirty-day window to dispute the information before his license was made inactive. Further, the public

9

interest does not tilt the balance. The Court concludes Mr. Isijola has not plausibly stated that the State Defendants' actions violated his due process rights.

### B. The Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause dictates that a state is prohibited from treating similarly situated individuals differently on account of their "classification in a particular group." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105-06 (1st Cir. 2015). The basis for Mr. Isijola's claim is that he is an African American male (ECF No. 1 ¶ 4) and that the RI DMV violated his "clearly established rights to equal protection as a member of a protected class despite repeated pleadings" that his license not be cancelled. *Id.* ¶ 68. "To survive a motion to dismiss this claim, he must plead that (1) he was treated differently than others similarly situated, and (2) that the motivation behind the different treatment was based on race." *Fosu v. Univ. of Rhode Island*, 590 F. Supp. 3d 451, 459 (D.R.I. 2022). As to the first prong, Mr. Isijola has not provided any factual allegations asserting that he was treated differently than any other Rhode Island resident in similar circumstances. He therefore fails to set forth facts that satisfy the first prong of the test. He also does not allege any facts that, taken as true, could plausibly establish that the motivation behind any differential treatment was race. Instead, Mr. Isijola's complaint is simply a recitation of the legal standard without any allegations that demonstrate he was treated differently. As such, he has failed to "set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v.*

*Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). The Equal Protection claim fails as a matter of law.

## IV. CONCLUSION

For these reasons, the State Defendants' Motion to Dismiss is GRANTED and Mr. Isijola's Complaint is DISMISSED.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

March 10, 2026